UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHARI BATY,

    *Plaintiff*,

v.

CASE NO. 1:14-cv-14669

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGEMENT
(Docs. 21, 23)

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Baty's Motion for Summary Judgment (Doc. 21) be **DENIED** and that the Commissioner's Motion for Summary Judgment (Doc. 23) be **GRANTED**.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. §§ 401-34 and Supplemental Security Income ("SSI"). (Doc. 2.) The matter is currently before the Court on cross-motions for summary judgment. (Docs. 21, 23.)

On May 5, 2012, Plaintiff Shari Baty filed the present claim for SSI and DIB, alleging that she became disabled on October 1, 2010. (Tr. 182-91.) Plaintiff's initial claim was denied on June 8, 2012 (120-27), and Plaintiff requested a hearing. (Tr. 128.) She testified before Administrative Law Judge ("ALJ") Thomas Walters on July 11, 2013, who considered the application for benefits *de novo*. (Tr. 69-88.) On August 26, 2013, the ALJ denied her claim. (Tr. 46-62.) The ALJ's decision became the Commissioner's final decision on October 28, 2014, when after reviewing additional exhibits, the Appeals council denied Plaintiff's request for review.[1] (Tr. 1-4.); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

On December 10, 2014, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Pl compl., Doc. 1.) Plaintiff's attorney filed a motion for summary judgment and supporting brief on March 18, 2015 (Doc. 10.) On May 27, 2015, Plaintiff's Council filed a supplemental brief. (Doc. 16). On June 9, 2015 a stay was issued and a three judge panel considered substitution of counsel. (Doc. 17.) On November 18, 2015, an Order lifting the stay was issued and a deadline was set for plaintiff to obtain council. (Doc. 18.) Plaintiff's current counsel entered an appearance on December 14, 2015. (Doc. 19.) On December 15, 2015, an order for supplemental briefing was issued. (Doc. 20.) On December

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. See *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

17, 2015, Plaintiff filed her current motion for summary judgment. (Doc. 21.) Defendants filed a cross motion for summary judgment on January 14, 2016. (Doc. 23.)

### B. Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Id.* (internal citations omitted).

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The burden

transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five step analysis, the ALJ found Plaintiff was not disabled under the Act. At Step One, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity since the alleged onset date, October 1, 2010. (Tr. 51.) At Step Two, the ALJ found Plaintiff had the following severe impairments: "symptoms of carpal tunnel syndrome, remote discectomy with residual back pain, [] post left knee arthroscopy with residual pain, [and] vertigo." (Tr. 52.) At Step Three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (*Id.*) The ALJ then found that Baty had the residual functional capacity ("RFC") to perform sedentary work

> except she can lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit 6 out of 8 hours and stand/walk 2 out of 8 hours in a typical work day. The claimant should never perform overhead work, no forceful grip or grasp with hands or use vibrating tools. No kneeling, crawling, or squatting. She can only occasionally bend, twist, or turn. She should never work with moving machinery or at unprotected heights.

(*Id.*) At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work as a cashier or caregiver. (Tr. 56.) At Step Five, the ALJ found that a significant number of jobs

5

existed which Baty could perform despite her limitations. (Tr. 57.) The ALJ also found that Plaintiff was 45 and therefore a younger individual (age 45-49) as of the alleged onset date. (Tr. 56.) He also found that Plaintiff has at least a high school education and is able to communicate in English. (*Id.*) As a result, the ALJ found Plaintiff is not disabled under the Act. (*Id.*)

### E. Administrative Record

#### 1. Medical Records

Plaintiff's medical records indicate that she suffered from lower back pain, carpel tunnel syndrome, knee pain, and vertigo. (Tr. 261-63, 266, 271, 287, 289-90, 291, 295, 297.) At issue in this appeal is Plaintiff's alleged carpal tunnel syndrome. On May 9, 2011 Elaine Kountanis M.D. noted symptoms of "carpal tunnel syndrome in both hands but no signs of sensory loss or thenar atrophy." (Tr. 263.) Dr. Kountanis noted that Plaintiff had a "positive Phalen test on both hands with numbness occurring in the median nerve distribution after 20 seconds" and that she was able to lift ten pound dumb bells over her head in either hand. (Tr. 262.) On December 29, 2011, Plaintiff was treated for bilateral carpal tunnel syndrome by Andre Smith, M.D. (Tr. 271.) Dr. Smith noted a positive Phalen's and positive Tinel's in the hands, which was worse on the right. (*Id.*) He injected Plaintiff's right hand with kenalog and lidocaine. (*Id.*) On March 7, 2013, Plaintiff was again assessed with carpal tunnel syndrome. (Tr. 290.)

On September 20, 2012, an agency medical consultant reviewed claimant's medical records and opined that her statements regarding pain and other symptoms were not adequately supported by the medical evidence. (Tr. 276.) He noted that her bilateral carpal tunnel

syndrome was not severe because of the absence of sensory loss and thenar muscle atrophy and the fact that she was able to lift 10 pound dumb bells in either hand overhead. (*Id.*)

### 2. Vocational Expert

The Vocational Expert ("VE") testified at the hearing before the ALJ on July 11, 2013. (Tr. 83-87.) The ALJ posed the following hypothetical:

> I'm going to ask you to assume a person of the same age, education, vocational experience as the claimant, who would have a residual functional capacity for a range of sedentary unskilled work. There would be no overhead reaching or lifting. There would be no kneeling, crawling or squatting required. There would be no use of air or vibrating tools, and there would be occasional bending, twisting and turning and no work around machinery or unprotected heights. With those limitations, would there be sedentary, unskilled jobs?

(Tr. 84.) In response the VE testified that such an individual could work as a call out operator, surveillance system monitor, or appointment clerk. (Tr. 84-85.) The VE testified that there are 620 call out operator jobs available in the lower peninsula of Michigan and it is an unskilled, sedentary occupation. (*Id.*) She testified that a surveillance system monitor occupation is sedentary and that there are 2,600 positions available. (Tr. 85.) With regard to appointment clerks, the VE testified that that the entry level is sedentary and it is a very low end semiskilled occupation. (*Id.*) The VE stated "I think that job, although it is classified as sedentary, I think that there are options for that, that are entry level that could be done, given all of these factors in this hypothetical." (*Id.*) She testified that there are 8,000 appointment clerk jobs in the lower peninsula of Michigan. (*Id.*)

The ALJ then asked if the testimony of the claimant was credible and supported by the medical evidence, could such a person perform the jobs identified above on a full-time basis. (*Id.*) The VE testified that such a person would be precluded from working. (Tr. 85.) First,

because the individual could not meet an employer's full time attendance requirements, and second, because the individual needs to lie down for one to two days. (*Id.*) The VE then testified that her testimony was consistent with the *Dictionary of Occupational Titles* ("DOT"), "with the exception of the jobs that I cited they would be and the opinions on her ability to secure and maintain full-time employment would be based on my opinion on attendance records typically accepted by employers." (Tr. at 85-86.)

On cross examination by Plaintiff's counsel, the VE clarified the number of absences that would be work preclusive. (Tr. 86.) The VE testified that during a probationary period, which could be as long as ninety days, no absences are generally allowed, and if they are allowed a doctor's note is generally required. (*Id.*) After that, one to two absences per month is generally permitted, but not on a continued basis. (*Id.*)

### F. Governing Law

In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). A reviewing court must consider the evidence in the record as a whole, including any evidence that might subtract from the weight of the Commissioner's factual findings. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)

("'[A]n ALJ can consider all the evidence without directly addressing in his [or her] written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)); see also *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); see also *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545). With warmest condolences

### G. Analysis

#### 1. Substantial Evidence Supports the ALJ's Step Five Decision

Plaintiff argues that the ALJ lacked substantial evidence to conclude at Step Five that a significant number of jobs existed that Plaintiff could perform. (Doc. 21, at 6-12.) The ALJ relied on the VE's testimony that a hypothetical individual with Plaintiff's impairments could perform "occupations such as callout clerk (620 jobs); surveillance system monitor (2600

jobs); and appointment clerk (8000 jobs) in the lower peninsula of Michigan." (Tr. 57.) As an initial matter, Defendant admits that the ALJ erred by relying on the position of callout clerk: "The commissioner acknowledges that the [DOT] classifies the call out clerk position as being performed at the light exertional level, and therefore the position is beyond the limitations in the RFC and hypothetical question." (Doc. 23, at 6 n.2 (citing *DOT* 209.667-014, 1991 WL 671807).) I suggest that this error is harmless because the ALJ met her Step Five burden by relying on the VE's testimony that there are a total of 10,600 surveillance system monitor and appointment clerk jobs available in Michigan. "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. 20 C.F.R. § 404.1566(b). The Sixth Circuit has not set a specific number for what constitutes a "significant number" of jobs. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). However, in *Born v. Secretary of Health & Human Services*, the Sixth Circuit found that 2500 jobs will meet the burden. 923 F.2d 1168, 1174 (6th Cir. 1990). Here, the ALJ clearly met that burden.

With this initial error in mind I will address each of Plaintiff's allegations of error. First, Plaintiff argues that since the occupation of appointment clerk is semiskilled it does not meet the requirements of the hypothetical question which limited the hypothetical individual to unskilled work. (Doc. 21, at 8.) However, as Defendant points out the VE explained that he included appointment clerk because there were entry level positions that the hypothetical person could perform. (Tr. 85; Doc. 23, at 6.) Essentially, Plaintiff is arguing that the VE's testimony, with regard to the appointment clerk, conflicted with the DOT and that the Commissioner should be bound by the DOT. However, since the VE provided a reasonable

explanation for the conflict the ALJ did not err here. SSR 00-4p, 2000 WL 1898704, 2000 SSR LEXIS 8, at *4-5 ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."). The Sixth Circuit has repeatedly held that the "the ALJ and consulting vocational experts are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the [DOT's] classifications." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (citing *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995)).

Next, Plaintiff argues that the "record is defective because it does not contain the DOT numbers of the listed occupations." (Doc. 21, at 9.) Plaintiff argues that this creates problems of proof because "there may be multiple codes for each job, [and] there is often no means of determining how the jobs enumerated by the VE align with the jobs listed in the DOT. (*Id.* at 8 (citing *Goulette v. Comm'r of Soc. Sec.*, No. 12-11353, 2013 U.S. Dist. LEXIS 76725, 2013 WL 2371695, at *13 (E.D. Mich. May 30, 2013); *Ralson v. Astrue*, No. 09-cv-14790, 2011 U.S. Dist. LEXIS 153167, 2011 WL 7299836, at *4 (E. D. Mich. Aug. 30, 2011); *Teverbaugh v. Comm'r of Soc. Sec.*, 258 F. Supp. 2d 702, 705 (E.D. Mich. 2003).)

However, the cases cited by Plaintiff do not establish a legal basis for remanding for a mere failure to provide DOT numbers. In *Teverbaugh v. Commissioner of Social Security*, the VE's failure to provide DOT numbers was merely a secondary issue that exacerbated the ALJ's failure to ask the vocational expert if her testimony conflicted with the DOT. 258 F. Supp.2d at 705. Similarly, in *Goulette v. Commissioner of Social Security* and *Ralson v.*

*Astrue*, the courts identified a conflict between the DOT and the VE testimony that was not reasonably explained by the VE or the ALJ. 2013 WL 2371695, at *13; 2011 WL 7299836, at *4. This error was aggravated by the VE's failure to provide DOT numbers. *Id.* Here, the ALJ specifically asked the VE if his testimony was consistent with the DOT, and the VE provided a reasonable explanation for any conflicts. (Tr. 85-86.)

As Defendant points out, Plaintiff's situation more closely resembles that in *Owens v. Commissioner of Social Security*, No. 2:14-cv-10830, 2015 WL 1129893 (E.D. Mich. Mar. 12, 2015). In *Owens*, the Plaintiff challenged the ALJ's decision because the ALJ relied on VE testimony that omitted the specific DOT codes. *Id.* at *9. The court held that this argument fails because Plaintiff's counsel did not raise the issue during the administrative hearing, the VE provided a reasonable explanation for any inconsistency between his testimony and the DOT, and Plaintiff had not identified any actual error or prejudice that Plaintiff sustained because of the omission. *Id.* The *Owens* court noted that, "consistent with Sixth Circuit precedent, the ALJ was entitled to rely on, and was not required to further investigate, the VE's testimony after it was found consistent with the DOT." *Id.* (citing *Holland v. Comm'r of Soc. Sec.*, No. 09-240, 2010 WL 3672338, 2010 U.S. Dist. LEXIS 96805, *52 (S.D. Ohio Mar. 1, 2010). In this case, the ALJ specifically inquired whether the VE's testimony was consistent with the DOT, and the VE provided an explanation for any inconsistencies. (Tr. at 85-86.) Plaintiff has not identified any additional inconsistencies. The only prejudice alleged by Plaintiff is that without the specific DOT numbers it is "impossible to determine what the jobs actual[ly] required in terms of hand usage, grasping etc." (Doc. 21, at 9.) However, as Defendant points out, there is only one readily available job for the occupations of surveillance

system monitor and appointment clerk. (Doc. 8-9 (citing *DOT* 379.367-010, 1991 WL 673244; *DOT* 237.367-010, 1991 WL 672185).) Moreover, Plaintiff relies on the DOT code for surveillance system monitor in developing her arguments; thus she has failed to demonstrate prejudice. (*See* Doc. 21, at 9-10.) Therefore, I suggest that this error does not justify remand.

Plaintiff next argues that the VE's testimony is flawed because he did not provide the source used to obtain the number of jobs available. (Doc. 21, at 9.) Plaintiff directs the court to *Hermann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014), where the court remanded a claim because the ALJ improperly ignored evidence from consulting physicians. In dicta, the court noted: "We do not know how the vocational expert in this case calculated the numbers to which he testified. Nothing in the record enables us to verify those numbers, which the administrative law judge accepted." *Id.* at 1114. The court found that the only public source identified by the VE was the DOT which is "an obsolete catalog of jobs . . . [and] contains no statistics regarding the number of jobs in a given job category that exist in the local, state, or national economy." *Id.* at 1113. The court expressed doubt in the accuracy of the VE's usual source for such numbers: the *Occupational Employment Quarterly*. *Id.* The court explained:

> The source of the journal's statistics is census data, and the Census Bureau reports not the number of jobs in each job category in the *DOT* but instead the number of jobs in a broader job category that includes some of the *DOT's* narrower categories. The vocational expert divides the number of jobs in the broad category by the number of fine categories within the broad category, and the result is his estimate of the number of jobs in the finer category, that is, the number of jobs the administrative law judge believes the applicant for benefits is capable of performing.

*Id.* at 1113-14.

A number of other courts have addressed these concerns. *See, e.g.*, *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014); *Guiton v. Colvin*, 546 Fed. App'x 137, 141-45 (4th Cir. 2013); *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 446-47 (2d Cir. 2012); *Liskowitz v. Astrue*, 559 F.3d 736, 742-44 (7th Cir. 2009); *Moyers v. Colvin*, 2015 U.S. Dist. LEXIS 28354 (M.D. Tenn. Mar. 9, 2015); *Petry v. Colvin*, 2013 U.S. Dist. LEXIS 89759, 2013 WL 3245330, at *12-13 (N.D. Ohio June 26, 2013). However, the courts have been reluctant to hold that VEs must have technical knowledge of the raw data and methods supporting the statistics. *See Guiton v. Colvin*, 546 Fed. App'x at 142 ("[I]f we required a VE to produce job statistics specific to the DOT coded occupations a claimant can perform, it is unlikely that the Commissioner would ever succeed in satisfying her burden."). Moreover, Plaintiff did not question the VE on the basis of his findings, and she can't now complain because counsel failed to adequately cross examine the VE when she had the opportunity. (Tr. 85-86.) *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Baranich v. Barnhart*, 128 F. App'x 481, 489 (6th Cir. 2005). In addition, "nothing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008). Thus I suggest that the ALJ did not err by failing to include the source of the VE's used to obtain the number of jobs available.

Next, Plaintiff argues that the ALJ erred at Step Five because the VE did not provide numbers for the entire nation. (Doc. 21, at 9.) However, as Defendant points out the Sixth Circuit held in *Mullins v. Gardner*, 396 F.2d 139, 140 (6th Cir. 1968) that "[t]he test under the

14

1967 amendment is whether such work exists in the national economy, and that is defined in the amendment to mean 'work which exists in significant numbers either in the region where such individual lives or in several regions of the country.'" Thus, I suggest that the ALJ did not err by relying on the regional numbers provided by the VE.

Plaintiff next argues that the position of surveillance system monitor is not consistent with the limitations provided in the RFC. (Doc. 21, at 9-11.) First, Plaintiff alleges that the DOT is outdated, and the court should rely on the classification set forth in the *Selected Occupational Characteristics*, which classifies the position as semi-skilled. (*Id.* at 9-10; Doc. 23, at 10.) However, Plaintiff provides no support for the fact that the ALJ should not rely on the DOT, and this assertion contradicts agency policy, which permits ALJ's to rely on the DOT. 20 C.F. R. §§ 404.1560(b)(2), 416.960(b)(2). Second, Plaintiff cites a Tenth Circuit case which held that the ALJ's decision was not supported by substantial evidence because the DOT states that a surveillance system monitor requires level-three reasoning and the claimant's limitations were consistent with level-two reasoning. (Doc. 21, at 10 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).) Plaintiff appears to assert that the same situation is present here. *Id.* However, Plaintiff's argument holds no merit because the Sixth Circuit rejected the proposition that "[DOT] jobs requiring reasoning levels two or three are inconsistent as a matter of law with a limitation to simple work." *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011). Third, Plaintiff cites to *McClesky v. Astrue*, 606 F.3d 351, 353 (7th Cir. 2010), stating that court noted that the position of surveillance system monitor requires training and a license from the Department of Homeland Security. (Doc. 21, at 10.) However, the *McClesky* court never reached this finding. It remanded the case because

15

the ALJ failed to determine whether a license was required based on the evidence submitted and the ALJ inadequately assessed the claimant's credibility. *McClesky*, 606 F.3d at 355. Here, no evidence was submitted to the ALJ that the position of surveillance system monitor requires special training or a license; thus Plaintiff's argument is meritless. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[T]his court has repeatedly held that evidence submitted . . . after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.").

Plaintiff also argues that in light of her prior arguments the only remaining occupation that Plaintiff can perform is that of call out operator; thus there is not a significant number of jobs that Plaintiff can perform. (Doc. 21, at 10-11.) However, as discussed above Plaintiff's arguments lack merit so the occupations of surveillance system operator and appointment clerk may be considered in determining whether a significant number exists. I therefore suggest that the ALJ met her Step Five burden by relying on the VE's testimony that there are a total of 10,600 surveillance system monitor and appointment clerk jobs available in Michigan. *See* 20 C.F.R. § 404.1566(b); *Hall*, 837 F.2d at 275; *Born*, 923 F.2d at 1174.

### 2. Waived Argument

At the end of her brief Plaintiff states that her "carpal tunnel syndrome impacted the amount of time that she could use her hands for writing, grasping etc." (Doc. 21, at 11.) She alleges that "plaintiff did not have the capacity to use both of her hands for the amount of time required to perform sedentary work activity on a full time basis [and] plaintiff was limited to unskilled, sedentary work activity." (*Id.*) Plaintiff then cites to Social Security Rulings 85-15 and 96-9p apparently arguing that there is support that a person with limited hand movement is

unable to perform most unskilled sedentary jobs. (*Id.* at 11-12.) However, I suggest that she waived this argument because it is fatally undeveloped. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that . . . arguments adverted to in only a perfunctory manner, are waived."). Plaintiff does not direct the court to anything in the record to support her conclusion that Plaintiff did not have the capacity to use both of her hands. She also does not point to any evidence indicating that the ALJ failed to adequately address her medical records or credibility in his extensive discussion of her limitations and medical history. (Tr. 52-56.) Moreover, I note that the ALJ included a restriction in his RFC that Plaintiff could not "forceful[ly] grip or grasp with hands or use vibrating tools," which would account for limitations related to Plaintiff's carpal tunnel syndrome. (Tr. 52.) Thus I suggest that Plaintiff waived this argument.

### H. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Baty's Motion for Summary Judgment (Doc. 21) be **DENIED**, the Commissioner's Motion (Doc. 23) be **GRANTED**, and that this case be **AFFIRMED**.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d

435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987.) Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 9, 2016                    S/ Patricia T. Morris
                                          Patricia T. Morris
                                          United States Magistrate Judge


### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: February 9, 2016                    By s/Kristen Krawczyk
                                          Case Manager to Magistrate Judge Morris